JANVIER, Judge.
Charles A. Ferro brought this suit against Charles F. Carter and Nola Cabs, Inc., the liability insurance carrier of Carter, alleging that he had sustained serious physical injuries when the automobile of which he was in control but which was standing stationary on Poydras Street, in the city of New Orleans, was run into from the rear by a taxicab operated by Charles F. Carter. The automobile in which plaintiff was sitting when he sustained his injuries belonged to his father, who has subrogated the plaintiff to any •rights he may have had against the defendants for the damage sustained by the automobile, and plaintiff has included in his claim this item of damage.
Defendants admitted the occurrence of the accident, but averred that it had been caused by the fact that the automobile under the control of the plaintiff, Ferro, was not standing stationary when the accident occurred, but was being backed towards the street around the corner of which Carter drove the taxicab.
From a judgment for $787.94 plaintiff appealed, praying that the amount awarded be increased. Defendants answered the appeal, praying that the judgment be reversed in toto.
The accident occurred on the lower roadway of Poydras Street, in the City of New Orleans, at about 3:25 o’clock, on the afternoon of September 28, 1949, almost in front of the business establishment of Cudahy Packing Company, which is located on the lower side of Poydras Street and just beyond the lake-side corner of LaSalle Street. The plant of the Cud-ahy Packing Company is so designed as to permit automobiles approaching it on Poydras Street to turn to the right and enter the establishment through three double entrance driveways provided for that purpose. It was the purpose of Ferro to drive into the plant of this Packing Company, but, when he reached these driveways, he saw that they were all occupied by automobiles. It is his contention that, seeing these driveways were all occupied and seeing that there were automobiles parked along the righthand curb of Poy-dras Street, he stopped his car alongside the cars which were parked against the curb and waited until one of these entrances might be open so that -he could then drive his car into the establishment of the Packing Company, and that after his car had been standing in that position for at least a minute or two, it was run into from the rear by the taxicab operated by Carter.
It is the contention of defendants, on the contrary, that, as Carter turned his taxicab to the right around the corner of LaSalle Street and attempted to proceed out Poydras Street in the direction of *165 Claiborne Avenue, the car operated by Fer-ro was suddenly backed from the establishment of Cudahy, or from the protection of vehicles parked along the curb, and that this backing car of Ferro crashed into the front end of the taxicab operated by Carter before the latter could be stopped.
The evidence, as usual, is conflicting, that offered by plaintiff substantiating his contention that his car was stationary and had been stationary for some time when it was run into, and that offered by defendants substantiating the testimony of Carter, that Ferro’s car was suddenly backed into the taxicab when the latter was so close to it that it could not be stopped.
Carter, the defendant, says: “ * * * this fellow was backing up and hit me.” But he also said that when he made the turn “there was nothing on the left”, meaning that he could have gone farther into Poydras Street and obviously passed beyond the Ferro car. He said that 'Poy-dras Street was “very wide”.
F. C. Stack, a witness who did not actually see the occurrence but who arrived a very short time afterwards, says that he heard Carter say: “I just didn’t- see where I was going, or something.”
Mr. William M. Hardenstein, an employee of the Cudahy Packing Company, who was not present in Court but whose testimony was taken by deposition, said that when the accident occurred the Ferro car was standing stationary in the roadway. Hardenstein said that Ferro had backed his car “a foot or two” but that when it was struck it was stationary and about 3'5 or 40 feet from the corner of LaSalle Street.
Ferro said that when he reached the entrance of the Cudahy Packing Company and saw that he could not enter and Har-denstein asked him to wait a short time, he brought his car to a stop and had been stopped for a minute or two. when it was struck.
There were two witnesses on behalf of defendants who were passengers in the taxicab. They were Mary Martin and Mary Wilson.
Mary Martin said that the taxicab was just turning off LaSalle Street when “this other car was backing out from the packing house and the cab hit it.” However, she had just said “there isn’t very much that I can say now because it was quite a long time ago and I don’t remember quite a bit of it now.”
Mary Wilson, the other passenger in the taxicab, referring to the Ferro car, said: “ * * * it backed up all of a sudden, I said ‘look out’, and he had run into the bumper and there wasn’t anything to do about it done knocked us off the seat. But it just backed.”
In this state of the record we find it impossible to reach any other conclusion than that the Judge of the lower court was not.manifestly in error in finding that the Ferro car was stationary when it was struck an# that the accident resulted from the fact that Carter drove his car around the corner to the right and crashed into the rear of the stationary Ferro car. Based on this conclusion of fact a judgment in favor of Ferro for the injuries sustained and for the damage to the car was obviously correct and we therefore pass to a consideration of the question as to whether the amount allowed was sufficient.
By the judgment plaintiff was allowed $600 for pain and suffering, $87.94 for damage to the automobile, and $100 for medical expenses.
As appellant, plaintiff makes a halfhearted complaint that he should have been awarded some amount for medical expenses to be incurred in the future, and he strenuously contends that the amount awarded him for pain and suffering should have been" substantially increased beyond the $600 awarded him.
Three doctors testified as to plaintiff’s injuries, Dr. Chetta and Dr. Maurer on behalf of plaintiff, and Dr. Berkett on behalf of defendants.
Dr. Chetta said that when the plaintiff called on him, 'he complained of severe *166 pain, in the back of his neck and in the lower portion of his back, and that he noticed “quite a bit of spasm of the muscle.” He said that he referred to “cervical muscles” as well as “lumbodorsal muscles.” He identified the cervical muscles as those of the neck and the lumbodorsal muscles as those of the lower portion of the back and hip. He said that he recommended that X-rays be taken and that these X-rays showed negative; in other words, that there were no fractures. He said that when the plaintiff first called on him he was “doubled” over with pain.
The plaintiff remained under medical treatment from the time of the occurrence in September, 1949, to May, 1951, but it is obvious that the treatment was not constant and that he often went back to his physician only for observation.
Dr. Chetta said that he recommended that the plaintiff wear a brace- since his occupation required him to staild and lift heavy quarters of beef. When asked whether Mr. Ferro’s injuries were permanent, he said:
“'I can answer this in a sort of equivocal way. We in the medical profession always say that once a back is hurt and badly sprained, it is considered a weak back in the sense that that person will 'have back complaint almost constantly on the slightest little exertion, by twisting or turning or lifting.”
He followed this with a statement that he believed “from the history on the visits he has come to me that is a constant complaint.” He described the injury sustained by the plaintiff as a “whiplash injury”, saying that a whiplash injury is one which results “from a severe twisting motion.”
Dr. Maurer says that he examined the plaintiff first on June 13, 1950 (the accident occurred in September, 1949) and that at that time he complained continuously of pain and said that he found it difficult to sleep. He said that at that time plaintiff obviously had improved, but added that “he has a slight residual of a lumbo-dorsal strain.” He was asked how long plaintiff’s condition would persist, and he said:
“Indefinitely. He may have a little trouble with it, and sometimes he may get an acute attack. That is characteristic of this particular condition. Sometimes you get better and sometimes you get worse.”
Dr. Berkett, who testified on behalf of defendants, but who did not examine the plaintiff until May 2, 1951, seemed to feel that plaintiff had entirely recovered from any injuries which he may have sustained in the accident. He said that
“ * * * certainly at the time of my examination I felt that there were no residuals of any injury which he might -have sustained to the low-back region and actually no residuals, of course, of the cervical spine.”
Dr. Berkett particularly referred to the belt which the plaintiff was wearing at the time of his examination in June, 1951, saying that it appeared to him to be quite new although the plaintiff said that it was the same belt which had been originally prescribed and which he had been wearing constantly. We refer to this merely because of the fact that Dr. Berkett obviously believed that the plaintiff was malingering and had not been in the constant pain which he says he suffered from the time of the accident until the time of the examination by Dr. Berkett.
However, Dr. Berkett said that when he first saw him, he “didn’t appear in any great pain,” indicating, we think, that he must have evidenced some .slight discomfort at that time.
On the whole we conclude that the plaintiff sustained a rather severe jolt to his back and neck and that for several months at least he was in pain and could not perform his usual duties in his business.
Our conclusion is that the amount awarded him, $600, is not adequate compensation for the pain and suffering which he sustained and we have concluded that this should be increased to $1,500, which, together with the other amounts allowed, will make a total of $1,687.94.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the increase of *167 the amount thereof to $1,687.94, and that, as thus amended, it be affirmed, all at the cost of defendants.
Amended and affirmed.